1  COOLEY GODWARD LLP
   THOMAS J. FRIEL, JR. (80065)
2  BRANDON D. BAUM (121318)
   CLIFFORD LIU (211763)
3  3000 El Camino Real
   Palo Alto, CA 94306-2155
4  Telephone:    (650) 843-5000
   Facsimile:    (650) 857-0663
5
   Attorneys for Plaintiff
6  NAZOMI COMMUNICATIONS, INC.

7
                    UNITED STATES DISTRICT COURT
8
                  NORTHERN DISTRICT OF CALIFORNIA
9
                         SAN JOSE DIVISION
10

11  NAZOMI COMMUNICATIONS, INC.,            Case No.  C02-02521 (JF)

12             Plaintiff,                    **NAZOMI'S MEMORANDUM IN SUPPORT
                                             OF MOTION FOR PROTECTIVE ORDER**
13        v.
                                             Date:     October 9, 2002
14  ARM HOLDINGS PLC; ARM LIMITED and        Time:     9:30 a.m.
    ARM, INC.; and DOES 1-100,               Judge:    Hon. Richard Seeborg
15
               Defendants.
16

17  AND RELATED CROSS-ACTION.

18

19

20

21

22

23

24

25

26

27

28

COOLEY GODWARD LLP
ATTORNEYS AT LAW
SAN FRANCISCO

MEMO. IN SUPPORT OF MOTION FOR
PROTECTIVE ORDER
C02-02521 (JF)

TABLE OF CONTENTS

PAGE

I.     INTRODUCTION/OVERVIEW ................................................................................. 1

II.    STATEMENT OF FACTS ...................................................................................... 3

III.   THE DISPUTE OVER THE PROTECTIVE ORDER ........................................................ 4

IV.    ARGUMENT ..................................................................................................... 5

       A.    The Northern District's Confidentiality Order, As Modified By Magistrate
             Zimmerman's Addendum, Is Appropriate For This Case .................................... 5

       B.    There Is No Basis For Imposing A Patent Prosecution Bar In This Case .............. 6

             1.   The Courts Reject Per Se Rules Denying Access to Specific Groups
                  or Classes of Attorneys ................................................................. 6

             2.   The Standard For Imposing A Patent Prosecution Bar is Whether
                  the Attorney is Involved in the "Competitive Decisionmaking" of a
                  Party ........................................................................................ 6

             3.   The Record Is Undisputed That Cooley's Patent Attorneys Are Not
                  Involved In Competitive Decisionmaking at Nazomi ............................. 7

             4.   Nazomi Will Be Prejudiced If the Patent Prosecution Bar is
                  Imposed ..................................................................................... 8

             5.   The Cases ARM Relies On Are Readily Distinguishable ........................ 8

                  a.   Cases Involving In-House Counsel (Brown Bag, Davis) .............. 8

                  b.   Cases Involving Outside Patent Prosecution Counsel
                       (Motorola, Interactive Coupon, Papst) .................................. 9

       C.    There Is Absolutely No Basis In Law For Imposing A Licensing Bar ................ 10

             1.   ARM's Proposed Licensing Bar Impermissibly Asks Litigation
                  Counsel To Choose Between Representing Nazomi in This Case,
                  Or Other Clients in Future Cases ................................................... 10

             2.   ARM's "Licensing Bar" Goes Far Beyond What ARM Imposes On
                  Its Customers ............................................................................ 11

             3.   ARM Offers Neither Facts Nor Law To Support Its Proposed
                  Licensing Bar ............................................................................ 12

       D.    The Court Should Impose A Final Protective Order So That Discovery Can
             Proceed ............................................................................................... 14

V.     CONCLUSION ................................................................................................. 15

i

# TABLE OF AUTHORITIES

**PAGE**

## CASES

*Amersham International v. Corning Glass Works*
108 F.R.D. 71 (D. Mass. 1985) .................................................................. 4

*Amgen, Inc. v. Elanex Pharmaceuticals, Inc.*
160 F.R.D. 134 (W.D. Wash. 1994) ........................................................ 9

*Bayer Corp. v. Roche Molecular Sys., Inc.*
72 F.Supp.2d 1111 (N.D. Cal. 1999) ..................................................... 14

*Brown Bag Software v. Symantec Corp.*
960 F.2d 1465 (9th Cir. 1992) ................................................ 6, 7, 8, 9, 13

*Capacchione v. Charlotte-Mecklenburg Bd. of Educ.*
9 F.Supp.2d 572 (W.D.N.C. 1998) ......................................................... 8

*Davis v. AT&T Corp.*
1998 U.S. Dist. Lexis 20417 (W.D.N.Y. Dec. 23, 1998) ......................... 9

*Fluke Corp. v. Fine Instruments Corp.*
32 U.S.P.Q.2d 1789 (W.D. Wash. 1994) ................................................ 7

*Glaxo Inc. v. Genpharm Pham., Inc.*
796 F. Supp. 872 (E.D.N.C. 1992) ....................................................... 6, 8

*Globespan, Inc. v. O'Neil*
(C.D. Cal. 2001) 151 F.Supp.2d 1229, 1235 ......................................... 14

*Gray v. First Winthrop Corp.*
133 F.R.D. 39 (N.D. Cal. 1990) ............................................................ 12

*In re Certain Magnetic Switches*
1993 ITC Lexis 143 at *4 (U.S.I.T.C. 1993) ........................................... 8

*In re Pabst Licensing*
2000 U.S. Dist. Lexis 6374 (E.D. La. May 4, 2000) ........................... 10, 13

*Intel Corp. v. VIA Technologies, Inc.*
198 F.R.D. 525 (N.D. Cal. 2000) ...................................................... 12, 13

*Interactive Coupon Marketing Group, Inc. v. H.O.T! Coupons, LLC*
1999 U.S. Dist. Lexis 12437 (N.D. Ill. Aug. 5, 1999) ........................... 10

*Matsushita Elec. Indus. Co. v. U.S*
929 F.2d 1577 (Fed. Cir. 1991) .......................................................... 6, 9

*Motorola, Inc. v. Interdigital Technology Corp.*
1994 U.S. Dist. Lexis 20714 (D. Del. 1994) ...................................... 9, 10

*Twin City Fire Ins. Co. v. Employers Ins. of Wausau*
124 F.R.D. 652 (D. Nev. 1989) ........................................................... 12

*U.S. Steel Corp. v. United States*
730 F.2d 1465 (Fed. Cir. 1994) .................................................. 6, 7, 12, 13

*Xerox Corp. v. 3Com Corp.*
69 F. Supp.2d 404 (W.D.N.Y. 1999) ...................................................... 4

COOLEY GODWARD LLP
ATTORNEYS AT LAW
SAN FRANCISCO

MEMO. IN SUPPORT OF MOTION FOR
PROTECTIVE ORDER
C02-02521 (JF)

1

# TABLE OF AUTHORITIES
(CONTINUED)

2                                                                          PAGE

3                           **OTHER AUTHORITIES**

California Rule of Professional Conduct 1-500 ............................................................... 11

4

California Business & Professions Code Section 16600 ............................................. 12

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY GODWARD LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii.

MEMO. IN SUPPORT OF MOTION FOR
PROTECTIVE ORDER
C02-02521 (JF)

1   COOLEY GODWARD LLP
    THOMAS J. FRIEL, JR. (80065)
2   BRANDON D. BAUM (121318)
    CLIFFORD LIU (211763)
3   3000 El Camino Real
    Palo Alto, CA  94306-2155
4   Telephone:    (650) 843-5000
    Facsimile:     (650) 857-0663
5
    Attorneys for Plaintiff
6   NAZOMI COMMUNICATIONS, INC.

7

8                        UNITED STATES DISTRICT COURT

9                      NORTHERN DISTRICT OF CALIFORNIA

10                            SAN JOSE DIVISION

11

| 12 | NAZOMI COMMUNICATIONS, INC., | Case No.  C02-02521 (JF) |
|----|------------------------------|--------------------------|
| 13 | Plaintiff, | **NAZOMI'S MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER** |
| 14 | v. | Date:       October 9, 2002 |
| 15 | ARM HOLDINGS PLC; ARM LIMITED and ARM, INC.; and DOES 1-100, | Time:       9:30 a.m.<br>Judge:      Hon. Richard Seeborg |
| 16 | | |
| 17 | Defendants. | |
| 18 | AND RELATED CROSS-ACTION. | |

19

20   **I.      INTRODUCTION/OVERVIEW**

21          Plaintiff Nazomi Communications, Inc.  ("Nazomi") and defendants ARM et al. ("ARM")

22   have reached an impasse with respect to two competing protective orders.  Discovery in this

23   action cannot proceed until the Court enters an order to govern the disclosure and use of the

24   parties' confidential information.

25          Nazomi proposes that the parties abide by the model protective order that is found on the

26   Northern District of California's website, as modified by Magistrate Judge Zimmerman's

27   addendum thereto.   ARM proposes its own protective order that contains unreasonable,

28   unjustified provisions that make it impossible for Nazomi to accept.

1  It is important to understand what this motion is *not* about. This motion is *not* about

2  permitting employees of either party to access the other party's confidential technical

3  information. The parties agree that is prohibited.

4  This motion is also *not* about in-house counsel for either party having access to the other

5  party's confidential technical information. Again, that is prohibited under either party's proposal.

6  Finally, this case is *not* about Nazomi's litigation counsel also acting as its patent counsel,

7  and pursuing patents for Nazomi after having reviewed ARM's confidential information. Cooley

8  Godward LLP ("Cooley") does not handle Nazomi's patent prosecution work.

9  This motion *is* about two broad restrictions that ARM seeks to add to the protective order

10  that would effectively prevent Nazomi from employing counsel of its choosing. Specifically,

11  ARM proposes the Court impose a "patent prosecution bar" and a "licensing bar" on outside

12  counsel. The patent prosecution bar would prevent Nazomi's outside litigation counsel from

13  prosecuting patents for *any* client in the fields of "computer processors technology" or Java

14  "hardware and software" during the pendency of this action and beyond. ARM's proposed

15  "licensing bar" would prevent Nazomi's outside litigation counsel from being adverse to ARM

16  (and other third parties that produce materials in discovery) during the pendency of this litigation

17  and for a period of five years thereafter.

18  The case law is settled on this issue. The Courts can not presume that outside counsel will

19  intentionally or inadvertently misuse confidential information disclosed in discovery. To find

20  otherwise would effectively limit outside counsel to representation of a single client in each field

21  or industry. Instead, unless the party seeking the protective order can articulate specific facts to

22  overcome the general rule, no bar should be imposed.

23  The justification for denying these limitations is particularly strong here for several

24  reasons. First, the attorneys that would be impacted by these bars play no role in "competitive

25  decisionmaking" at Nazomi, and indeed have no involvement with Nazomi at all except for the

26  instant litigation. Second, there are no facts, specific or otherwise, from which this Court could

27  conclude any substantial risk that outside counsel might misuse ARM's confidential information.

28  On the other hand, the protective order that ARM seeks will cause Nazomi to suffer undue

COOLEY GODWARD LLP
ATTORNEYS AT LAW
SAN FRANCISCO

621797 v2/PA
dbs502!. DOC

2.

MEMO. IN SUPPORT OF MOTION FOR
PROTECTIVE ORDER
C02-02521 (JF)

prejudice because it will increase the expense of this suit and hamper its ability to pursue this suit with counsel of its choosing. It would also interfere with the existing attorney-client relationship established between Nazomi and its counsel over one year ago. It is also unacceptable to Nazomi's counsel, who will suffer from the proposed restrictive, anticompetitive provisions.

For all of these reasons, as detailed herein, the Court should reject ARM's request and instead impose the Northern District of California's model protective order on the parties so that discovery may proceed.

## II. STATEMENT OF FACTS

Nazomi is a small, privately-funded company in Santa Clara, California. Unlike ARM, Nazomi does not have worldwide offices, an in-house legal department, or a multi-billion dollar market capitalization. One significant asset that Nazomi does have is U.S Patent No. 6,332,215. This case involves ARM's infringement of that patent.

Nazomi retained Cooley as counsel over one year ago to investigate enforcement of its intellectual property rights. *See* Declaration of William Galliani ("Galliani Decl.") at ¶ 3. As part of its counsel to Nazomi with respect to the enforcement Nazomi's intellectual property rights, Cooley has provided the services of Bill Galliani, who is a member of the patent bar. *Id.* at ¶ 3. Mr. Galliani is the only member of the litigation team who is an electrical engineer. *Id.*

Nazomi desires that Mr. Galliani continue working on this case. Declaration of Mukesh Patel ("Patel Decl.") at ¶ 3. Nazomi has confidence in Mr. Galliani based on the experience he has gained from working on this matter since October 2001. *Id.* As the only electrical engineer on the litigation team, Mr. Galliani has provided and will continue to provide Nazomi with critical legal analysis based on his familiarity with and understanding of microprocessor technology, ARM's accused products and the patent-in-suit. *Id.*

Nazomi does not use Cooley for its patent prosecution work, or any work outside this case. Patel Decl. at ¶ 4; Galliani Decl. at ¶ 4. Mr. Galliani does not anticipate being involved in any patent prosecution work for Nazomi in the future unless the patent-in-suit is subject to a

1  reissue, reexamination, or interference proceeding in connection with this litigation.[1] *Id.*

2  However, if ARM's proposed "patent prosecution bar" were imposed in this case, Mr. Galliani

3  would no longer be able to work on the matter.  Galliani Decl. at ¶¶ 5-6.

4       Brandon Baum is litigation counsel for Nazomi.  Declaration of Brandon Baum ("Baum

5  Decl.") at ¶ 1.  He would find it difficult to agree to ARM's proposed "licensing bar" or to find

6  other attorneys or experts to agree to such a bar.  *Id.* at ¶ 4.  The reason it would be difficult is

7  because the "licensing bar" would prevent anyone working on this case from representing other

8  clients in the future in negotiations or litigation against ARM.  *Id.*  Because ARM holds a 75%

9  share of the embedded processor market, Mr. Baum believes it is possible, if not likely, that

10  existing and future clients may become adverse to ARM in intellectual property disputes.  *Id.* at

11  ¶¶ 3, 4.

## III.    THE DISPUTE OVER THE PROTECTIVE ORDER

13       Despite negotiations between counsel, the parties have been unable to agree on the scope

14  of the order.  The Patent Local Rules contemplate that this may occur, and therefore Patent Local

15  Rule 2-2 provides that where a protective order has not yet been entered, the parties shall

16  nevertheless engage in discovery by treating all documents as "Confidential -- Outside Attorneys

17  Eyes Only."  Patent L.R. 2-2.

18       Nazomi has repeatedly invoked Patent Local Rule 2-2 (*see* Exs. 9, 11 to Andelman Decl.),

19  but ARM refuses to abide by it.  Instead, ARM has insisted on its own unique form of order that

20  imposes two requirements that go well beyond what Rule 26(c) allows:

21     • ARM's insistence on a broadly worded "patent prosecution bar" that would
22        prevent any person having access to any information designated confidential
       under the protective order from prosecuting "patents related to computer
23        processor technology" or Java hardware and software.[2]  *See* ARM's Proposed

---

24  [1] It is not uncommon for an accused infringer to seek reexamination of the patent-in-suit or to attempt to
provoke an interference in the Patent & Trademark Office.  *See Xerox Corp. v. 3Com Corp.*, 69 F. Supp.2d

25  404 (W.D.N.Y. 1999) (defendant sought reexamination of patent after infringement lawsuit filed);
*Amersham International v. Corning Glass Works*, 108 F.R.D. 71, 72 (D. Mass. 1985) (defendant filed for

26  interference after infringement lawsuit filed).  Such proceedings are considered alternatives to litigation.
[2] Further, the technology description ARM advocates is so vague and so overbroad as to arguably cover

27  technologies that have nothing to do with the patent-in-suit, ARM or its products. The patent-in-suit
concerns Java (a software language) hardware accelerators for DISC and RISC processors. To "limit" the

28  bars to "patents related to computer processor technology" is, in truth, not very limiting at all and goes far

COOLEY GODWARD LLP
ATTORNEYS AT LAW
SAN FRANCISCO

621797 v2/PA
dbs502!. DOC

4.

MEMO. IN SUPPORT OF MOTION FOR
PROTECTIVE ORDER
C02-02521 (JF)

Order at ¶4.   This bar would effectively prevent Bill Galliani from any further participation in the litigation.   Galliani Decl. at ¶¶ 5-6.

- ARM's insistence on a "licensing bar" that would prevent any person having access to any information designated confidential under the protective order from being substantively involved in licensing negotiations against any party producing confidential information.  *See* ARM's Proposed Order at ¶ 5.   This bar is particularly onerous because we do not know the identities of every third party that might produce documents in this case pursuant to subpoena. Therefore, this provision would prevent litigation counsel from being involved in patent enforcement work against parties as yet *unknown*, for a period of five years after this case is over.

While other issues also remain unresolved[3], it is these two issues that prevent the parties from engaging in discovery.

## IV.   ARGUMENT

### A.   The Northern District's Confidentiality Order, as Modified by Magistrate Zimmerman's Addendum, Is Appropriate for this Case.

The Northern District of California's confidentiality order ("Order"), as modified by Magistrate Judge Zimmerman's addendum ("Addendum"), provides appropriate balancing of protections for the parties' confidential information in this case.   The Order provides that confidential materials may only be used for this case, and may only be shown to clients as necessary for the prosecution or defense of the litigation.   Order at ¶4.   The Addendum adds a second tier of confidential treatment, "Confidential – Attorneys' Eyes Only,"  for "the most highly sensitive documents."   Addendum at ¶ 1.   Such material can not be shown to clients, must be filed under seal, and cannot be shown to experts and consultants unless they agree to be bound by the Order.

---

beyond even any colorable relationship to ARM technology, and would cover much of computer science. Adding to the ARM-proposed "limitation" "Java hardware and software" makes the provision even more overbroad. An attorney wishing to do further work would be at his or her peril in deciding where the line is drawn, even years after this case is terminated.

[3] The other outstanding issues include (1) ARM's refusal to agree to a two-tiered order ("Confidential" and "Confidential – Outside Attorneys Eyes Only," with the highest tier limited to truly confidential technical or financial information; and (2) Nazomi's request that the burden of establishing that information qualifies for the highest level of protection under the order should fall on the designating party. Nazomi believes that a two-tiered order, with the burden on the designating party to justify the designation, will prevent the parties from over-designating materials at the highest level, and will permit the clients to be apprised of some litigation material that is not deemed to be at the highest level of confidentiality. That is how Magistrate Judge Zimmerman has modified the model protective order by his addendum. *See* Baum Decl., Exs.2, 3.

COOLEY GODWARD LLP
ATTORNEYS AT LAW
SAN FRANCISCO

621797 v2/PA
dbs502!. DOC

5.

MEMO. IN SUPPORT OF MOTION FOR
PROTECTIVE ORDER
C02-02521 (JF)

1    Like ARM, Nazomi believes that its confidential information is highly proprietary and

2    maintaining confidentiality is critical to its business.  As the Court is probably aware, every party

3    to a patent litigation believes that is the case.  For this reason, Patent Local Rule 2-2 contemplates

4    that, in patent cases, a two-tier protective along the lines set forth above is appropriate.

5    **B.     There Is No Basis for Imposing a Patent Prosecution Bar in this Case.**

6    **1.     Courts Reject *Per Se* Rules Denying Access to Specific Groups or

7    Classes of Attorneys.**

8    ARM's proposed patent prosecution bar would effectively prevent a class of attorneys—

9    outside patent prosecutors with knowledge of microprocessor or Java technology—from

10   involvement in this action unless they are willing to forego all other patent activity in that field.

11   Analysis of this restriction must start with the Federal Circuit's decision in *U.S. Steel Corp. v.*

12   *United States*, 730 F.2d 1465 (Fed. Cir. 1994), which set the standard for review of protective

13   orders that deny access to confidential information to attorneys in pretrial discovery.[4]  In *U.S.*

14   *Steel*, the court ruled that access could not be denied to a group of attorneys (in that case in-house

15   counsel) based on general, class-based distinctions.  *U.S. Steel*, 730 F.2d at 1468 ("Denial or grant

16   of access . . . cannot rest on a general assumption that one group of lawyers are more likely

17   inadvertently to breach their duty under a protective order.").  Rather, the reviewing court must

18   determine, based on the specific facts in each case, whether or not access by the specific attorneys

19   involved will create an unreasonable risk that the confidential information will be inadvertently

20   disclosed or misused.  *Id.*

21   **2.     The Standard for Imposing a Patent Prosecution Bar Is Whether the

22   Attorney Is Involved in the "Competitive Decisionmaking" of a Party.**

23   *U.S. Steel* holds that the issue for the Court is whether a particular attorney is involved in

"competitive decisionmaking" of the party seeking access.  *U.S. Steel*, 730 F.2d at 1468.  The

24

25   court went on to explain the meaning of "competitive decisionmaking":

26   _____

27   4 *U.S. Steel* is recognized as the "leading authority" on this issue.  *Brown Bag Software v. Symantec Corp.*,
960 F.2d 1465, 1470 (9th Cir. 1992); *Matsushita Elec. Indus. Co. v. U.S.,* 929 F.2d 1577, 1578-79 (Fed.
Cir. 1991); *Glaxo Inc. v. Genpharm Pham., Inc.*, 796 F. Supp. 872, 874 (E.D.N.C. 1992) (relying on
28   analysis established by *U.S. Steel*.).

COOLEY GODWARD LLP
ATTORNEYS AT LAW
SAN FRANCISCO

621797 v2/PA
dbs502!. DOC

6.

MEMO. IN SUPPORT OF MOTION FOR
PROTECTIVE ORDER
C02-02521 (JF)

> The phrase would appear serviceable as shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor.

*U.S. Steel*, 730 F.2d at 1468, n.3.  To evaluate the risk that a competitive decisionmaker might misuse confidential information produced in discovery, "a court should examine the factual circumstances of any counsel's relationship to the party demanding access." *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992).

### 3. The Record Is Undisputed that Cooley's Patent Attorneys Are Not Involved In Competitive Decisionmaking.

Cooley represents Nazomi in this litigation.  Cooley attorneys do not participate in Nazomi's "competitive decisionmaking."  ARM offers no facts showing, and does not appear to contend, that Cooley attorneys are engaged in Nazomi's competitive decisionmaking.  Instead, ARM argues that patent prosecutors play such a role *generally* for their clients, and therefore, as a group, "patent prosecutors pose a substantial risk of accidental or inadvertent use of confidential information."  Memo at p. 8.  In other words, ARM's position is that *anyone* who prosecutes patents in this area, whether or not they do so for Nazomi, is a competitive decisionmaker for *someone*, and therefore must be barred.

ARM's absurd argument violates the two principles of disqualification enunciated above.  First, ARM's proposal would improperly bar Nazomi's outside attorneys from participating in the litigation based solely on their status as patent prosecutors.  *See U.S. Steel*, 730 F.2d at 1469 (Noting "the requirement to consider the facts rather than status of counsel.")  Second, it fails to examine the "factual circumstances of any counsel's relationship *to the party demanding access*." *Brown Bag*, F.2d at 1470 (emphasis added).

The case law has uniformly rejected ARM's suggestion that attorneys who prosecute patent applications, even *in-house* patent attorneys who prosecute patents for a party, are *per se* disqualified from receiving confidential information under a protective order.  *See Fluke Corp. v. Fine Instruments Corp.*, 32 U.S.P.Q.2d 1789 (W.D. Wash. 1994) (In-house counsel with technical expertise as patent attorneys not involved in competitive decisionmaking and represents no

COOLEY GODWARD LLP
ATTORNEYS AT LAW
SAN FRANCISCO

621797 v2/PA
dbs502!. DOC

7.

MEMO. IN SUPPORT OF MOTION FOR
PROTECTIVE ORDER
C02-02521 (JF)

1    significant increased risk of inadvertent disclosure); *Glaxo Inc. v. Genpharm Pharmaceuticals,*

2    796 F. Supp. 872 (E.D.N.C. 1992) (Magistrate's order barring in-house patent attorneys from

3    reviewing confidential documents reversed as error, where counsel had "no involvement in . . .

4    competitive decisions such as pricing, scientific research, sales or marketing"); *In re Certain*

5    *Magnetic Switches,* 1993 ITC Lexis 143 at *4 (U.S.I.T.C. 1993) (Baum Decl., Ex. 4) ("Mere

6    allegation that [in-house patent prosecution counsel] might violate the protective order does not

7    provide adequate grounds to deny him access to confidential information.") Therefore, ARM's

8    attempt to impose a patent prosecution bar that would prevent outside patent prosecutors from

9    working on Nazomi's behalf simply because they may prosecute patents for others must be

10    rejected.

11            **4.**      **Nazomi Will Be Prejudiced if Patent Prosecution Bar Is Imposed.**

12       The potential for harm here is not merely hypothetical.  Nazomi has been working Mr.

13    Galliani for over one year, and it would like to continue that representation.  Patel Decl. at ¶¶ 2-3.

14    Mr. Galliani would be unable to continue the representation if ARM's proposed patent

15    prosecution bar is imposed.  Galliani Decl. at ¶¶ 5-7.  Nazomi is entitled to counsel of its choice,

16    absent compelling reasons otherwise.  *Capacchione v. Charlotte-Mecklenburg Bd. of Educ.,* 9

17    F.Supp.2d 572, 579 (W.D.N.C. 1998) ("[A] party's right to have counsel of choice is a

18    fundamental tenet of American jurisprudence, and therefore a court may not lightly deprive a

19    party of its chosen counsel.") Therefore, Nazomi would suffer prejudice if the patent prosecution

20    bar is imposed.

21            **5.**      **The Cases ARM Relies on Are Readily Distinguishable.**

22             **a.**      **Cases Involving In-House Counsel (*Brown Bag, Davis*).**

23       None of the cases cited by ARM are applicable because each involved a situation where

24    counsel had involvement with the client beyond the litigation at hand.  ARM discusses *Brown*

25    *Bag Software v. Symantec Corp.,* 960  F.2d 1465, 1470 (9th Cir. 1992) at length but neglects to

26    mention the two facts most critical to its holding: 1) *Brown Bag* denied access to in-house

27

28

COOLEY GODWARD LLP
ATTORNEYS AT LAW
SAN FRANCISCO

621797 v2/PA
dbs502!. DOC

8.

MEMO. IN SUPPORT OF MOTION FOR
PROTECTIVE ORDER
C02-02521 (JF)

1  counsel, not outside counsel[5]; and 2), after an evidentiary hearing, the magistrate found *based on*

2  *specific facts* that in-house was involved in "competitive decisionmaking" at the company.  *Id.* at

3  1471.  Here, unlike *Brown Bag*, we are dealing with outside attorneys who play no role in

4  competitive decisionmaking at Nazomi.

5  ARM also cites *Davis v. AT&T Corp.*, 1998 U.S. Dist. Lexis 20417 (W.D.N.Y. Dec. 23,

6  1998).  *Davis* involved the unusual situation in which the plaintiff/inventor himself was seeking

7  access to the defendants' confidential information.  The court found that, given his unique

8  position as an inventor, as well as his lack of any demonstrated harm, the inventor could be barred

9  although his counsel would not.  *Id.* at *9.  Nazomi is not seeking to permit the inventors of the

10  patent-in-suit or any other Nazomi employee to have access to ARM's confidential information,

11  and therefore *Davis* supports our position, and not ARM's position.

12  A more pertinent case is *Matsushita Elec. Indus. Co. v. U.S.*, 929 F.2d 1577 (Fed. Cir.

13  1991), in which the Federal Circuit permitted access by in-house counsel because he was not

14  involved in competitive decisionmaking of the company, even though he was an officer of the

15  corporation.  *Id.* 1579-80.  Similarly, in *Amgen, Inc. v. Elanex Pharmaceuticals, Inc.*, 160 F.R.D.

16  134, 139 (W.D. Wash. 1994), which was also a patent suit, the court concluded that the patentee's

17  in-house counsel did not participate in competitive decisionmaking and therefore could not be

18  denied access to confidential materials produced in discovery.

19  
20
                **b.    Cases Involving Outside Patent Prosecution Counsel (*Motorola,
                        Interactive Coupon, Papst*).**

21  In arguing for a patent prosecution bar, ARM also relies on *Motorola, Inc. v. Interdigital*

22  *Technology Corp.*, 1994 U.S. Dist. Lexis 20714 (D. Del. 1994).  However, the decision in

23  *Motorola* was based on a unique set of facts wholly absent from this case.    In *Motorola*, the

24  patentee brought suit for patent infringement, and then shortly thereafter substituted its litigation

25  attorneys in as patent counsel to take over the continuation and divisional applications of the

26

27  [5] In fact, the *Brown Bag* court had previously allowed outside counsel to access the documents.  It was
only when the plaintiff replaced outside counsel with in-house counsel that the concern arose.  *Id.* at 1470.

28

COOLEY GODWARD LLP
ATTORNEYS AT LAW
SAN FRANCISCO

621797 v2/PA
dbs502!. DOC

9.

MEMO. IN SUPPORT OF MOTION FOR
PROTECTIVE ORDER
C02-02521 (JF)

1    patents-in-suit, rather than the patent attorneys who had been prosecuting those patent

2    applications for some time. Judge Longobardi found that these very specific circumstances

3    created the appearance that the patentee was seeking to take advantage of their litigation

4    attorneys' access to the defendant's discovery documents. *Motorola*, at *16. Judge Longobardi

5    also found there would be little hardship to the patentee from the protective order in that case,

6    since litigation counsel had only just begun prosecuting the patent applications. *Id.*

7          Likewise, in *Interactive Coupon Marketing Group, Inc. v. H.O.T! Coupons, LLC*, 1999

8    U.S. Dist. Lexis 12437 (N.D. Ill. Aug. 5, 1999), the evidence was that outside patent prosecution

9    counsel "has represented and is likely to represent [plaintiff] in the prosecution of numerous

10   related patents." *Id.* at *8. Moreover, the court found, based on specific factual submissions, that

11   outside counsel played a role in the client's competitive decisionmaking. *Id.* at *9-10. Because

12   both factors were present, the court imposed a patent prosecution bar.

13         Finally, *In re Papst Licensing*, 2000 U.S. Dist. Lexis 6374 (E.D. La. May 4, 2000), also

14   involved the imposition of a bar on Papst's patent prosecution counsel, which the court found was

15   involved in Papst's competitive decisionmaking. *Id.* at *12.

16         Here, it is undisputed that (1) Cooley is not Nazomi's patent prosecution counsel, and (2)

17   Cooley plays no role in competitive decisionmaking at Nazomi. Therefore, to the extent the

18   *Motorola*, *Interactive Coupon*, and *Papst* offer guidance to the Court, it is that a patent

19   prosecution bar is inappropriate.

20         **C.      There Is Absolutely No Basis in Law for Imposing a Licensing Bar.**

21               **1.      ARM's Proposed Licensing Bar Impermissibly Asks Litigation
                         Counsel To Choose Between Representing Nazomi in this Case, or**
22                       **Other Clients in Future Cases.**

23         ARM's request that litigation counsel be barred from being adverse from ARM in

24   intellectual property enforcement and licensing in the future is, frankly, outrageous.[6] First, no

25   case has ever imposed such a bar on litigation counsel. Second, to even request such a bar is a

26   ─────────────

27   [6] ARM makes the baseless, absurd charge that counsel's "unwillingness to yield" to its demands for
     prosecution and licensing bars supports the conclusion that "Nazomi's lawyers do intend to use ARM's
     trade secret and confidential information against ARM" (Memo, page 2:16-19). This silly charge aptly
28   demonstrates the baselessness of ARM's position.

COOLEY GODWARD LLP
ATTORNEYS AT LAW
SAN FRANCISCO

621797 v2/PA
dbs502!. DOC

10.

MEMO. IN SUPPORT OF MOTION FOR
PROTECTIVE ORDER
C02-02521 (JF)

1  violation of California's ethical rules.  Finally, it runs afoul of numerous California proscriptions

2  on non-competition agreements as well as recent cases rejecting the inevitable disclosure

3  doctrine.

4      As Nazomi understands it, ARM claims that its information is so valuable and so

5  confidential that once litigation counsel is aware of it, irrespective of any protective order, they

6  cannot be trusted not to misuse that information in the future.  Not only is this insulting, it is a

7  misunderstanding of the role of an attorney.  Under ARM's proposal, litigation counsel could

8  only be adverse to another party *once* if confidential information were exchanged, and then it

9  must wait for a period of years (five years after termination of the first case) before it could be

10  adverse again.  And litigation counsel would be barred from representing *anyone* against ARM

11  for five years, not just Nazomi.  Indeed, existing clients must be told to go elsewhere if they have

12  a dispute with ARM, or, in the alternative, litigation counsel might have to decline the first

13  representation to avoid this unreasonable prior restrain on their practice.

14      Not surprisingly, no case has ever held that counsel can be barred from being adverse to

15  another party in the future.  Perhaps the reason no case has so held is that it is an ethical violation

16  to suggest such a thing.  California Rule of Professional Conduct 1-500 states that "[a] member

17  shall not be a party to or participate in offering or making an agreement, whether in connection

18  with the settlement of a lawsuit or otherwise, if the agreement restricts the right of a member to

19  practice law . . . ."  Yet ARM's proposal would do just that – litigation counsel would be

20  restricted from taking on representation of clients adverse to ARM during the pendency of this

21  case and for five years thereafter.  In essence, ARM is asking litigation counsel to choose

22  between representing Nazomi and representing other present or future clients.  And even if

23  litigation counsel chose to represent Nazomi *in this case*, it would be barred from representing

24  Nazomi in any future litigation against ARM.  This is a completely unwarranted and absurd

25  provision that would drive a wedge between Nazomi and its litigation counsel.

26
27
**2.    ARM's "Licensing Bar" Goes Far Beyond What ARM Imposes on Recipients of Its Confidential Information.**

28  ARM offers the declaration of Ehab Youssef to support its claim that ARM goes to great

COOLEY GODWARD LLP
ATTORNEYS AT LAW
SAN FRANCISCO

621797 v2/PA
dbs502!. DOC

11.

MEMO. IN SUPPORT OF MOTION FOR
PROTECTIVE ORDER
C02-02521 (JF)

1    lengths to protect its confidential information.   For instance, ARM's employees sign a

2    confidentiality agreement.   Youssef Decl., Ex. 2.   ARM also requires that its licensees treat

3    ARM's information confidentially.   *Id.*, Ex. 3.   These requirements are standard at most

4    technology companies and are similar to the restrictions in Northern District of California

5    protective order.

6         What ARM does *not* do, because it would not be legal, is attempt to impose on its

7    employees and licensees the restrictions it is attempting to impose on outside counsel here.   ARM

8    does not require its employees or licensees to agree that they will not seek patents in the relevant

9    field so long as they are involved with ARM.   ARM does not require its employees and licensees

10   to agree not to engage in any other negotiations against ARM during the pendency of their

11   existing employment or licensee agreement, *and for five years thereafter.*[7]   Nowhere in Mr.

12   Youssef's declaration does he suggest that ARM imposes anything even close to the restrictions

13   that ARM is seeking against counsel here.   There is simply no justification for imposing stricter

14   limitations on officer of the Court than ARM imposes on others to whom it grants access.

15
                        **3.      ARM Offers Neither Facts Nor Law to Support Its Proposed Licensing**
16                                  **Bar.**

17        ARM offers no facts to support its suggestion that litigation counsel will somehow misuse

18   ARM's confidential information in the future, in violation of the protective order.   Instead, ARM

19   makes the same sweeping generalizations that it did with respect to its proposed patent

20   prosecution bar – that the information "could be used by that attorney in a license negotiation

21   against ARM."   Memo at p. 10.   Of course, *U.S. Steel* and *Brown Bag* reject such sweeping

22   generalizations against counsel.   Instead, the party seeking the protection has the burden to

23   demonstrate "particular and specific demonstration[s] of fact, as distinguished from conclusory

24   statements ...." *Twin City Fire Ins. Co. v. Employers Ins. of Wausau*, 124 F.R.D. 652, 653 (D.

25

26   ───────────────
     [7] If ARM did try to impose such a restriction on its California employees and licensees, it would be in
27   violation of California's Business & Professions Code Section 16600, which provides that "[e]very
     contract by which anyone is restrained from engaging in a lawful profession, trade or business of any kind
28   is to that extent void." This provision also impacts law firms and their employees, and may invalidate
     restrictive agreements of the sort sought here.

COOLEY GODWARD LLP
ATTORNEYS AT LAW
SAN FRANCISCO

621797 v2/PA
dbs502!. DOC

12.

MEMO. IN SUPPORT OF MOTION FOR
PROTECTIVE ORDER
C02-02521 (JF)

Nev. 1989); *accord, Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990). Because there is no factual basis for a licensing bar, it must be rejected.

The law that ARM offers in making its request is *Intel Corp. v. VIA Technologies, Inc.*, 198 F.R.D. 525, 530 (N.D. Cal. 2000). Unfortunately, ARM neglected to mention a critical fact: *Intel* involved a request to grant Intel's *in-house counsel* access to confidential information under a protective order, not whether Intel's outside litigation counsel would be barred from being adverse to VIA in the future.

In *Intel*, Howrey & Simon argued that Intel's in-house licensing counsel, Ms. Fu, must be permitted access all discovery materials under the protective order so that she could "manage" the litigation. After an extensive evidentiary hearing, Magistrate Judge Larson found that Howrey & Simon's attorneys could manage the litigation on their own, and that Ms. Fu was involved in competitive decisionmaking at Intel, which was a competitor of VIA. *Id.* at 529-532. But the opinion by Magistrate Judge Larson neither considered nor suggested that Howrey & Simon could not be trusted with VIA's confidential information, or that Howrey & Simon could not be adverse to VIA in the future. Rather, the opinion notes that Howrey & Simon was, in fact, adverse to VIA in another case pending before the ITC. *Id.*

A far more probative decision is the follow-up opinion issued in the Papst litigation, *In re Papst Licensing*, 2000 WL 1036184 (E.D. La. July 25, 2000) (Baum Decl., Ex. 5). In that case, defendants were seeking to obtain a 1998 license agreement between Papst and third party Fujitsu. Fujitsu filed a motion for a protective order to prevent the defendants' in-house counsel from seeing the license agreement. Fujitsu offered evidence that the defendants were competitors of Fujitsu, and therefore disclosure of the license agreement to in-house counsel would adversely affect Fujitsu's ability to negotiate future agreements and would give the defendants/competitors an edge in pricing their products against Fujitsu. *Id.* *1. The court applied the test set forth in *U.S. Steel* and *Brown Bag*, and found that "Like retained counsel, . . . in-house counsel are officers of the court, are bound by the same Code of Professional Responsibility, and are subject to the same sanctions." *Id.* at *2 (quoting *U.S. Steel*, 730 F.2d at 1468.) Therefore, the court ruled, there was no basis to assume that in-house counsel would misuse the information in future

1   negotiations and the request for protective order was denied. *Id.*

2   Protective orders are concerned with keeping sensitive information out of the hands of

3   competitors. *Brown Bag*, 960 F.2d at 1470.   Cooley is not a competitor of ARM's.

4   Notwithstanding ARM's insinuations, the Court cannot presume that inadvertent disclosure will

5   inevitably occur between litigation counsel and their clients. *See Bayer Corp. v. Roche Molecular*

6   *Sys., Inc.,* 72 F.Supp.2d 1111, 1120 (N.D. Cal. 1999) (rejecting inevitable disclosure doctrine as

7   "counter to the strong public policy in California favoring employee mobility"); *Globespan, Inc.*

8   *v. O'Neill* (C.D. Cal. 2001) 151 F.Supp.2d 1229, 1235 (order by Baird, J.) ("The Central District

9   of California has considered and rejected the inevitable disclosure doctrine.")  Because ARM

10  offers no facts to support its speculation that litigation counsel will misuse confidential

11  information, ARM's proposed licensing bar must be rejected in its entirety.

12

13  **D.    The Court Should Enter a Final Protective Order so that Discovery Can Proceed.**

14  Although ARM pays lip service to moving forward in this case, it has employed a number

15  of devices to avoid doing so.   As the Court may be able to discern from the exchange of

16  correspondence, there remain a number of issues regarding a protective order beyond those

17  addressed above.  It was for this reason that Nazomi requested that Judge Fogel enter a protective

18  order in the case, resulting in the referral to this Court.

19  Nazomi proposes that the model protective order that is on the Northern District of

20  California's website be entered in this case, as modified by Magistrate Judge Zimmerman's

21  addendum thereto, also posted on the website.  This order addresses the outstanding concerns of

22  Nazomi; specifically because it provides for two tiers of protection (Confidential and Attorneys'

23  Eyes Only), and it places the burden of justifying a designation on the party seeking protection.

24  The protective order that ARM has repeatedly proposed, and that Nazomi has repeatedly

25  rejected, only offers one category of designation that is Attorneys' Eyes Only.  Thus, there is no

26  lesser degree of protection for information that does not merit trade secret status, but nevertheless

27  should be kept confidential in the litigation.

28  ARM's proposal also does not address the burden of justifying the designation.  Nazomi

COOLEY GODWARD LLP
ATTORNEYS AT LAW
SAN FRANCISCO

621797 v2/PA
dbs502!. DOC

14.

MEMO. IN SUPPORT OF MOTION FOR
PROTECTIVE ORDER
C02-02521 (JF)

1  believes that parties are often tempted to over-designate materials, which prevents the client from

2  having any information about the litigation.  The Northern District's model protective order

3  addresses this point by placing the burden of justification on the designating party, and by

4  cautioning the parties against over-designation.

5  Whatever the Court decides to do, it should not permit the parties to further delay

6  discovery by engaging in a debate over the protective order.  Nazomi has repeatedly offered to

7  abide by Patent Local Rule 2-2 while the protective order issue remains outstanding.  Indeed,

8  Patent Local Rule 2-2 was intended to address this very situation and to keep the case moving

9  forward while the protective order is negotiated.  But ARM has steadfastly refused to accept that

10  solution, allowing valuable time to slip away needlessly.  Therefore, the Court should simply

11  enter the model order.

12  **V.    CONCLUSION**

13  It used to be that the parties to a patent case engaged in wasteful motion practice for

14  months at the outset of a patent case, fighting over the terms of a protective order.  Patent Local

15  Rule 2-2 was intended to put a stop to that practice.  Unfortunately, it continues on here because

16  ARM seeks provisions well above and beyond the requirements of Rule 2-2.  Hopefully, this

17  Court can put an end to this nonsense by entering the model protective order, which will allow the

18  parties proceed with discovery.

19  October 7, 2002

20  COOLEY GODWARD LLP
   BRANDON D. BAUM (121318)

21

22

23  By: _____/s/_____
                 Brandon D. Baum

24  Attorneys for Plaintiff
   NAZOMI COMMUNICATIONS, INC.

25

26

27

28

COOLEY GODWARD LLP
ATTORNEYS AT LAW
SAN FRANCISCO

621797 v2/PA
dbs502!. DOC

15.

MEMO. IN SUPPORT OF MOTION FOR
PROTECTIVE ORDER
C02-02521 (JF)